W. P. Melton et al. [1] v. Commissioner. W. Melton v. Commissioner
Docket Nos. 23255, 23256, 23281, 23282, 29536, 29545, 30938, 30939, 32439, 32440.
United States Tax Court
1952 Tax Ct. Memo LEXIS 326; 11 T.C.M. (CCH) 133; T.C.M. (RIA) 52038; February 13, 1952
*326 L. W. Baker, C.P.A., 1004 Mercantile Bank Bldg., Dallas, Tex., for the petitioners, J. P. Crowe, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax as follows: 1944
1945
1946
1947
W. P. Melton
$2,652.14
$1,736.29
$1,161.66
$2,335.71
Hilda Melton
2,652.14
1,736.29
1,130.70
2,397.46
Ben H. Cordsen
2,387.67
Nana L. Cordsen
2,387.67
James N. Rosenthal
1,814.15
Rosalie Boros
1,806.02
The issues for decision are: (1) whether amounts which the petitioners reported as purchase price received from the sale of stock in N & R Liquor Store, stock in McCune Liquors, Inc., and an interest in Alps Package Store, gave rise to capital gains as reported by the petitioners or represented ordinary income either on the ground that the transactions did not represent sales but were mere subterfuges to conceal the receipt of ordinary income or that the sale of Alps Package Store did not take place until 1947; (2) whether the Meltons are entitled to deductions in 1945 or 1946 for nonbusiness bad debts; (3) whether the Meltons are entitled to deductions for *327 amounts claimed for 1945 as "samples expense"; (4) whether the Meltons are entitled to deductions for 1947 for amounts claimed as expenses for travel, entertainment and Christmas presents; (5) the amount, if any, of Melton's basis for stock in Mutual Liquor Store, Inc., and Sammies No. 2 to be subtracted from liquidated distributions received in 1947; and (6) whether the Cordsens are entitled to deduct for 1944 amounts claimed as expenses for Christmas presents, telephone, insurance and entertainment. The parties agree that a deduction for medical expenses for the Meltons for 1947 can be computed once the other issues are decided. Findings of Fact W. P. Melton and his wife, Hilda, Ben H. Cordsen and his wife, Nana, James N. Rosenthal and his wife, Rosalie (now Rosalie Boros), filed their returns for the taxable years in question with the collector of internal revenue for the Second District of Texas. They reported their income on a community property basis. Melton, at all times material hereto, was employed by Frankfort Distillers Corporation as its District Manager for Texas and Louisiana. Cordsen was Division Manager for Glenmore Distilleries at all times material hereto. The *328 policy of each employer was that its employees would not engage in the retail liquor business. Rosenthal had been employed by Glenmore prior to 1944. None of the petitioners was engaged in the business of selling corporate stock or liquor stores to customers. Melton, Cordsen, and Rosenthal incorporated the N & R Liquor Store on May 18, 1944. The store opened for business in Dallas on October 20, 1944, when it received its license. The three petitioners sold their stock on December 19, 1944. Melton owned four shares which cost him $996.42, and he received $16,700 for those shares. Cordsen and Rosenthal each owned 3.5 shares, the cost basis of which was $871.85 to each and for which each received $14,600. The profit to each is taxable as a long-term capital gain. The Commissioner, in determining the deficiencies, held that the profits represented ordinary income, explaining that the store "was a subterfuge and served only as a method for your receiving compensation for your influence and services in connection with the issuance of an allocation of liquor" to the store. Melton, in the summer of 1944, organized McCune Liquors, Inc., which operated a retail liquor store in Houston. *329 Melton owned one-half of the stock but carried it in the name of a nominee. The cost of the stock to Melton was $1,000. Melton engaged Wiley McCune to manage the store under an arrangement whereby McCune was to acquire the other one-half of the stock. That arrangement proved unsatisfactory and L. M. Stephenson replaced McCune after a few months and acquired 50 per cent of the stock. Melton and Stephenson agreed on September 1, 1945, that Stephenson would purchase Melton's stock. Stephenson gave to Melton at that time his note for $36,000 payable in monthly installments of $750. The agreement provided that Melton's nominee would continue to vote the stock until the full purchase price had been paid, and the approval of the nominee had to be obtained for any increase in salary to Stephenson. Melton was able to obtain liquor for the store during the years when liquor was scarce and the store operated successfully up to 1947. Thereafter, when liquor was more easily obtained, it was unable to operate successfully and Stephenson sold his interest in the store. He still owed Melton $23,750 of the original purchase price and Melton thereupon forgave that balance owed him. Melton, on his return *330 for 1945, reported the sale of the stock of McCune Liquors, Inc., on the installment basis, showed the receipt of $2,250 in that year and, after deducting a portion of the basis, reported a long-term capital gain of the difference. He made a similar report of the $6,750 received in 1946 and of the $3,250 received in 1947, except that in the latter year his computation showed the compromise sale price of $12,250. The Commissioner, in determining the deficiencies, held that $1,250, the excess of the amount received in 1945 over the basis, and the entire amounts received in 1946 and 1947 were ordinary income, explaining that "McCune Liquors, Inc., was a subterfuge and served only as a method for your receiving compensation for your influence and services in connection with the acquisition of liquor for McCune Liquors, Inc." The petitioner realized a long-term capital gain from the sale of the stock. Melton and Grover Crawford, an old acquaintance, entered into a written partnership agreement which is not dated. It was not a subterfuge. It recites that it is in confirmation of a prior oral agreement entered into on November 1, 1943. The partnership was to operate a retail liquor store *331 in San Antonio, Texas, known as Alps Package Store. Melton was able to procure liquor which was otherwise unavailable. He agreed to furnish $3,000 of capital and to procure the necessary supplies of liquor. Crawford was not to furnish any capital but was to manage the business. The agreement, as originally written, provided that the profits and losses of the business would be divided in the ratio of two-thirds to Melton and one-third to Crawford. A line was drawn through the two-thirds and the one-third, above the former 60% was written and above the other 40% was written, and below was written "Witnessed. L. Warren Baker 111-43", all with pen and ink. Lines were drawn through the 60% and the 40% and above each was written 50% with the notation "Effective 10-1-46" and nearby Melton and Crawford placed their initials. The store opened for business on November 13, 1943 and was still operating in 1951. Melton and Crawford signed an agreement dated August 1, 1945, providing for the sale by Melton of his 60 per cent interest in Alps Package Store to Crawford for $36,000, to be paid by the execution of a promissory note for that amount payable in monthly installments of $1,000 each, *332 beginning September 1, 1945, bearing no interest until after maturity. Crawford signed such a note. Neither party intended to be bound by the agreement or the note. The papers were merely to enable Melton to convince his employer that he had given up his interest in the retail liquor store. Melton, Crawford, and Crawford's wife, Opal, signed an agreement dated February 1, 1946, providing that Melton sold a fivetenths interest in Alps Package Store to Opal and a one-tenth interest to Crawford for $36,000 to be paid by the execution of a promissory note payable in monthly installments of $1,000 each, beginning March 1, 1946, bearing no interest except 6 per cent after maturity. Crawford and Opal signed and delivered such a note. Crawford and Opal gave Melton a writing dated February 1, 1946, the body of which is as follows: "For valuable consideration, receipt of which is hereby acknowledged and confessed, and the sale to me of your partnership interest in the Alps Package Store at San Antonio, Texas, we agree that you are hereby granted an irrevocable option, right and privilege to repurchase your interest in the Alps Package Store upon the cancellation of the unpaid balance due *333 on the $36,000 note we have this date made, executed and delivered to you, and agree that upon your notifying us that the aforementioned note is cancelled, that you are automatically revested with the title to your 60% interest." A typewritten document dated February 1, 1946 entitled Partnership Agreement, providing that Grover and Opal were associating themselves as equal partners in the conduct of Alps Package Store to which Grover was contributing his 40 per cent interest and the additional 10 per cent interest purchased on February 1, 1946, and Opal was contributing the five-tenths interest which she had purchased on that date, and further providing that they were to share profits and losses equally, was prepared and was signed by Grover. The record does not show whether or not Opal signed it. Melton gave the Crawfords a letter dated July 18, 1946 to the effect that upon his death the unpaid balance of the note for $36,000 dated February 1, 1946 would be considered cancelled provided the Crawfords transferred a 60 per cent interest in Alps Package Store to Melton's estate. Partnership returns were filed for Alps Package Store for the period January 1, 1944 to April 30, 1944 and *334 for the fiscal year ended April 30, 1945. The record does not show whether or not the income of the store for the period from May 1, 1945 to January 31, 1946 was ever reported. A partnership return for Alps Package Store for the fiscal year ended January31, 1947, marked "First Return", was filed on April 24, 1947 with the collector of internal revenue for the First District of Texas. It was signed by Grover Crawford and mailed to the collector by his accountant although prepared by Melton's accountant. It showed net income of $19,158.72 distributable in equal portions to Crawford and his wife. It contained a statement that the partnership was formed on February 1, 1946. An amended partnership return for Alps Package Store for the fiscal year ended January 31, 1947 was filed with the collector of internal revenue for the First District of Texas on June 27, 1947. It was signed by Grover Crawford and was prepared by his accountant. It showed net income of $19,158.72 of which $8,128.91 was shown as distributable to Crawford and $11,029.81 as distributable to Melton. The profits of Alps Package Store were declining in the latter part of 1946 and the early part of 1947. Melton received *335 amounts from the Crawfords on or about the first of each month, with possibly some exceptions, from March 1, 1946 through February 1, 1947 and a final payment of $4,500 on April 4, 1947, at which time the note was returned by Melton to the Crawfords with the understanding that they would henceforth own the store and not be obligated to make any further payments to Melton. Melton reported total payments of $11,800 for 1946 and $5,500 for 1947. He showed on his 1946 return that his interest in the partnership had been sold on February 1, 1946 for $36,000, his basis for that interest was $5,486.68 and his profits for that year, after deducting a portion the basis, was $10,001.56 of which one-half, or $5,000.78, was included in income as a long-term capital gain. He showed on his 1947 return that the sales price had been adjusted to $17,300 and reported the remainder of his profit as long-term capital gain of which $905.88 was included in income. The Commissioner, in determining the deficiencies against the Meltons for 1946, eliminated the $5,000.78 reported with the explanation "You did not sell your interest in the Alps Package Store during the year 1946; therefore, the capital gain *336 in the amount of $10,001.56 included in your gross income was not realized in such year and has been eliminated from your gross income for that year." He did not add anything to income as a result of this adjustment. The Commissioner, in determining the deficiencies against the Meltons for 1947, eliminated the $905.88 reported and added $5,500 to ordinary income with the explanation that "Amounts received in 1947 from liquor stores are held, as in prior years, to be ordinary income fully taxable and not proceeds of a long-term capital gain on installment sales of prior years, as claimed by you." Melton, at sometime not disclosed by the record, loaned Hugh Sherwood $370. He had formerly employed Sherwood. He made an additional loan of $301.49 to Sherwood in 1946. Melton met Frances Metzler at a dinner party given by a mutual friend in Denton, Texas. Thereafter, at sometime not shown by the record, he loaned her $500 to enable her to finish college. They had an understanding that she would obtain employment after her graduation and repay the loan from her earnings. She never made any payment on the loan. She finished college in 1945 and left Texas. She never communicated with the *337 petitioner thereafter. The record does not show what efforts, if any, Melton made to communicate with her or to collect the debt, but on his return for 1945, he gave her address as "New York, N. Y." The petitioner loaned Wiley McCune $2,000 on October 30, 1944, shortly after the two severed business connections. Melton was influenced in making the loan by the fact that McCune's brother-in-law was Executive Vice President of Frankfort Distillers. The brother-in-law also loaned McCune $2,000. McCune was to use the money to start a business. Melton, on his return for 1945, showed that he had received payment of $450 on the loan. His return for 1946 shows an additional payment of $150 on the loan. He wrote to McCune in 1949 demanding payment. McCune's wife sometime thereafter began to make small monthly payments on account of the debt and all but $800 had been paid at the time of hearing in this case. Melton, on his return for 1945, claimed short-term capital losses made up of the $370 loan to Sherwood, the $500 loan to Metzler and $1,550 of the loan to McCune. The Commissioner, in determining the deficiencies, disallowed those losses. Melton, on his return for 1946, claimed a similar *338 loss on a later loan of $301.49 to Sherwood. The Commissioner disallowed that loss. None of the debts became worthless either in 1945 or 1946. Melton, on his return for 1945, deducted from his income $4,363.86 described as an expense for "Samples". The Commissioner, in determining the deficiencies, added $3,128 of that amount to income with the explanation that it did not represent an allowable deduction. The $3,128 did not represent an expenditure for samples. The record does not show that it was spent for any purpose which would give rise to an allowable deduction for income tax purposes. Melton, on his return for 1947, claimed a deduction of $5,442.95 described as an expense of "Travel and Entertaining" and a deduction of $2,972.70 described as an expense for "Christmas presents to Dealers and Salesmen". The Commissioner disallowed the entire $5,442.95 claimed as travel and entertainment expense "for the reason that no evidence showing the nature and amount of expenses for which deduction was claimed has been furnished" and disallowed $1,200 of the amount claimed as the deduction for Christmas presents with the explanation "Christmas presents deducted, $1,200, are disallowed *339 and held to be personal expenditures not substantiated as deductions for tax purposes." The record does not show that Melton spent any amount for travel and entertainment expenses in excess of the amounts for which he was reimbursed by his employer. The record does not show that the $1,200 deducted as Christmas presents constituted ordinary and necessary expenses paid or incurred by Melton in 1947 in the conduct of his business. Melton, on his return for 1947, claimed a long-term capital loss on stock of Mutual Liquor Store represented by the excess of $4,444.21, the cost of the stock in 1944, over $2,425.52, a liquidating dividend paid in 1947. He also reported a long-term capital gain represented by the excess of a liquidating dividend, distributed on July 19, 1947 in the amount of $1,733.14 on stock of Sammies No. 2, over $500, shown as the cost of the stock on March 27, 1946. The Commissioner, in determining the deficiencies, held that the entire amount of each liquidating dividend was a long-term capital gain because the cost of the stock had not been substantiated. The cost to the petitioner of the Mutual Liquor Store, Inc., stock was $5,416.67. The record fails to show any *340 cost for the stock of Sammies No. 2. Cordsen, on his return for 1944, claimed deductions for various expenses including those described as "Xmas gifts to customers $186.32", "Telephone $86.81", "Insurance $50.00", and "Entertainment expense $700.00". The Commissioner, in determining the deficiencies, disallowed those deductions and explained "Since you were an employee and elected to compute the net income by taking the standard deduction of $500.00 each, these items are disallowed." Cordsen, in addition to being employed by Glenmore, was engaged in other business during 1944 from which he reported commissions in excess of $19,000. The amounts which the Commissioner disallowed for Christmas gifts to customers and telephone expense were spent by Cordsen in 1944 in the business of earning the commissions. The record does not show that the amounts claimed for insurance and for entertainment were paid or incurred by Cordsen in 1944 in the conduct of any business carried on by him. Opinion MURDOCK, Judge: The Commissioner has refused to approve the petitioners' method of reporting income on the sale of the stock of N & R Liquor Store, the stock of McCune Liquors, Inc., and the *341 interest in the Alps Package Store on the ground that in none of these enterprises did the petitioners have a real proprietary interest but on the contrary the "sales" were used as a subterfuge for receiving compensation for influence and services in obtaining liquor. He sees this pattern in the ownership not only of these stores but of some others and alleges that if his theory is not correct then in the alternative the petitioners were engaged in the business of selling liquor properties to customers. The present record does not justify findings which would support either of his contentions. It requires, on the contrary, findings that the sales of the N & R stock and the sale of the McCune Liquors stock resulted in long-term capital gains in the amounts reported by the petitioners. The record and the pleadings in regard to the Alps Package Store are in a confused state and it is difficult to come to any satisfactory conclusion as to the income of the Meltons from the store. The acts of Melton and Crawford, the two principal participants, both of whom testified, have not been consistent. They organized a partnership. Melton's interest in the partnership on February 1, 1946, was *342 60 per cent and Crawford's was 40 per cent. Melton either on that date or later sold his interest to the Crawfords. However, the record is not at all clear as to when and under what arrangements that sale was made. Melton contends that the sale was made on February 1, 1946, and thereafter he had no interest in the business. His returns and the first return made by Crawford for the business of the fiscal year February 1, 1946 through January 31, 1947 are consistent with that position. Furthermore, no other justification for a return for the business for a fiscal year ended January 31, 1947 appears. The payments received by Melton after February 1, 1946, do not equal 60 per cent of the profits of the store. However, Melton's acts and testimony do not inspire confidence. Some are quite inconsistent with his present contention. Both parties agree that the "sale" which took place on August 1, 1945 was a sham. Crawford and his wife both testified that the purported sale on February 1, 1946 was also a sham. Yet it is puzzling to know what a second farce would add to the first or why Opal would be brought in as a purchaser of an interest if it was a sham. Their testimony finds some support *343 in the documentary evidence but there is also reason to doubt their testimony. Crawford once, and he claims twice, allowed himself to be used for the purpose of deceiving Melton's employer. It is difficult to understand why Crawford would file the so-called "first return" for the partnership consisting of himself and his wife, why he would sign the agreement of partnership between himself and his wife, and why no new agreement was entered into in 1947, if, in fact, he and his wife had not purchased the interest of Melton on February 1, 1946. The only document giving Opal an interest in the business is the sale agreement dated February 1, 1946. Also, it is difficult to understand why Crawford would file a second return for the period beginning February 1, 1946 and ending January 31, 1947, since no return would be due for that period unless there was a sale by Melton on February 1, 1946. The old partnership of Melton and Crawford, if it continued, should have filed a return for a fiscal year ended April 30, 1946, and another for the period beginning May 1, 1946 and ending on whatever day Crawford claims he and his wife finally purchased Melton's interest. There is considerable inconsistency *344 in Crawford's acts and writings. The Commissioner has not introduced any return for the business for the period May 1, 1945 to January 31, 1946. The Court, after carefully considering all of the evidence on this point, does not know where the truth lies. The Commissioner has gotten himself into an odd situation. He eliminated from the Meltons' income for 1946 the amount which they had reported for that year as profit from the sale of the interest in the Alps Package Store but he did not add anything to their income as a result of this adjustment. He amended his answers for 1946 in order to claim, first, that all transactions under the name of Alps Package Store were a subterfuge and the entire $11,800 reported as received in 1946 was taxable to the Meltons as ordinary income since it represented compensation for influence or services. He has failed to sustain his burden of proof to support that contention. He further alleged in the alternative for 1946 that the sale did not take place until 1947 and therefore Melton's distributive share of the income of the partnership for the fiscal year ending "February 1, 1947" should be reported by him as ordinary income. That allegation attempts *345 to raise a false issue as to 1946 since the deficiency for that year would not be increased even if the Commissioner were successful. The petitioners have not sought to take advantage of this situation but contend that they correctly reported a capital gain for 1946 from the sale of Melton's interest in Alps Package Store. A proper solution of the controversy as to 1946 is that the petitioners correctly reported this item on their return. The Commissioner, in eliminating the capital gain reported by the Meltons for 1947, added to ordinary income the payments which they had reported for that year with an explanation which indicates that he was acting upon his theory that the whole transaction involving the Alps Package Store was a subterfuge. A finding has been made that the partnership between Melton and Crawford was not a subterfuge. The Commissioner amended his answers as to 1947 to allege that, in case the partnership was valid, then the sale did not take place in 1946 and $11,800 received in that calendar year was a distribution of partnership earnings for the fiscal year of the partnership ended "February 1, 1947". It does not appear that the partnership in which Melton was *346 a partner had any fiscal year ended February 1, 1947, but the Commissioner has failed to prove that the sale did not take place on February 1, 1946, and here again it is held that the Meltons correctly reported their income for 1947 from the sale. The Meltons have failed to show that the Commissioner erred in disallowing the deductions claimed by them for three bad debts in 1945 and one in 1946. A debt, to be deductible, must become worthless within the year. Section 23 (k) (4). Melton now concedes that, since he was still loaning money to Sherwood in 1946, the amount which he had theretofore loaned was not worthless in 1945. He did not go on to show what the situation was at the end of 1946. The possibility of it becoming worthless in 1947 is not in issue or covered by evidence. If Melton had completely lost contact with Frances Metzler by the close of 1945, it might be held that that debt had become worthless but that was not the case, for he had learned she was married, he had learned her married name, and he gave her address as New York City on his return. He should have made the situation clear. The Court can not allow a deduction, even for a relatively trivial item like this, *347 unless the taxpayer has made a reasonable showing of worthlessness. McCune made a payment on his indebtedness in 1945 and another in 1946. It does not appear that Melton made any further efforts to collect the debt until 1949 and then his efforts produced further payments. Obviously, the Court can not hold on such a record that any part of this indebtedness was worthless at any time material hereto. It is conceded that the $3,128 claimed by Melton as expense for samples for 1945 and disallowed was not actually spent for samples. The Meltons now claim that it was spent for travel and entertainment in connection with a brokerage business. They must show the expenditures and their purpose to succeed. Comparison with other years is not determinative. Melton reported brokerage income of $2,318.01 for 1945. The Commissioner has already allowed several expense deductions for that year, including $1,235.86 of the total amount claimed for "Samples" and the entire amount claimed for "Travel, Entertaining, Promotion." Numerous checks were introduced in evidence in connection with this issue but the record, as a whole, fails to show just what the $3,128 in question was actually spent for or *348 that it was spent for travel or entertainment which would represent an ordinary and necessary expense of the brokerage business of Melton for 1945. The action of the Commissioner must be sustained. The situation in regard to the proof of the next item is somewhat similar. Melton, on his return for 1947, claimed a deduction for travel and entertaining expense in the amount of $5,442.95. Total travel and entertaining expenses were shown on the return as $16,774.88 and from that a refund of $11,331.93 was subtracted to leave the amount of $5,442.95 as the deduction claimed. Melton, as a witness, explained that the expenses for travel and entertaining which he incurred on behalf of Frankfort Distilleries Corporation were refunded to him by that employer; he subtracted those expenditures from some total arrived at in a manner not entirely clear to the Court, subtracted $50 per week for household expenses and 10 per cent for incidental expenses and concluded that the remainder represented travel and entertainment expenses of his brokerage business. The use of such a method does not prove his case. Here again, a lot of checks have been introduced, but the record, as a whole, does not make *349 clear that Melton spent $5,442.95 for travel and entertaining in connection with his brokerage business during 1947 or what amount, if any, was actually spent for such purposes. The Commissioner, in determining the deficiencies, has allowed the Meltons a number of other deductions including $425.77 for transportation, substantial deductions for automobile expense and depreciation, a substantial deduction for "Samples" and a deduction for "Christmas presents to Dealers and Salesmen." The Court is unable to say on this record that the Meltons are entitled to any additional deduction for travel and entertaining. $1,200 of the $2,972.70 claimed by Melton for "Christmas presents to Dealers and Salesmen" in 1947 was disallowed on the ground that it represented personal expenditures not substantiated as deductions for tax purposes. The record does not show what the $1,200 in question was spent for or that the spending of it represented an ordinary and necessary expense paid or incurred by Melton in 1947 in the conduct of his business. The Court is aware of the inherent difficulty that confronts a taxpayer endeavoring, first, to discover which expenditures of the total claimed the Commissioner *350 has disallowed and then to show the purpose of those expenditures. Nevertheless, it can not allow a deduction which the Commissioner has disallowed unless the evidence shows reasonable ground for the belief that the Commissioner erred in some respect. Even proof that it was spent for "Christmas presents" would not show that it was a deductible expense of any business. The present record does not justify reversing the Commissioner's determination in regard to Melton's expenses for 1947. Melton made no effort to prove the cost of his stock in Sammies No. 2 and consequently the determination of the Commissioner that it had no cost must stand. He introduced two checks which he said represented the cost of his stock in Mutual Liquor Stores, Inc. They were both dated in December, 1944. One was to Jacob Finkelstein for $4,062.50. It was marked "For - Gladys Helen Stoffer for stock in Mutual Liquor Store, Inc." The other was for $1,354.17 to Jimmie Rosenthal and was marked "Bal. due on pchse of stock for Gladys Helen Stoffer." Gladys Helen Stoffer was a person used by Melton as a nominee for holding stock in another retail liquor store when he did not want his ownership to be known, and *351 it seems appropriate to infer, in the absence of clarifying cross examination, that she was merely a nominee in this case, although he did not actually say so. A finding has been made that the cost of the stock to Melton was the total of those two checks. The remaining issue is whether the Commissioner erred in disallowing certain deductions claimed by Cordsen in 1944. He introduced a ledger sheet on which a number of long distance telephone charges in the total amount of $86.81 were listed and an item of $186.32 described as "Xmas Exp for Customers." He testified that those amounts were spent in connection with his brokerage business from which he reported a large amount of income. The Commissioner disallowed the deductions on the theory that Cordsen was not engaged in any business but was merely an employee. Tnhse two deductions are allowed since it now appears that they were incurred and paid in connection with a business of the petitioner during 1944, and, as such, are allowable in addition to the standard deduction. The evidence in regard to the other two deductions does not add to the information contained in the returns or show that they were proper; therefore, the Commissioner's *352 determinations as to them must stand. Decisions will be entered until Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Hilda Marie Melton, Docket No. 23256; Ben H. Cordsen, Docket No. 23281; Mrs. Ben H. (Nana L.) Cordsen, Docket No. 23282; Hilda Marie Melton, Docket No. 29536; W. P. Melton, Docket No. 29545; Hilda Marie Melton, Docket No. 30938; W. P. Melton, Docket No. 30929; Rosalie Boros (Formerly Mrs. Rosalie Rosenthal), Docket No. 32439; James N. Rosenthal, Docket No. 32440.↩